CASE 78—ACTION TO ENJOIN COLLECTION OF TAX—DEC. 14.

# Scobee, Sheriff, v. Bean, &c.
# Same v. Scott, &c.

APPEAL FROM CLARK CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS. REVERSED.

TAXATION—SHARES IN NATIONAL BANKS—DISCRIMINATION.

Held: 1. Under Revised Statutes, U. S., section 5219, the Legislature of a State may, subject to certain restrictions, provide how shares in national banking associations shall be taxed.

2. As the statutes intended to apply to the taxation of banking associations and bank stocks have been held void as to national banks, shares in national banks may be taxed in the hands of the owners, under the general law providing for the taxation

Scobee, Sheriff, v. Bean, &c.   Same v. Scott, &c.

of real and personal estate of every kind; it being provided that the individual shareholder in a corporation required to list property is not required to list it so long as the corporation does so, which implies that the individual must list the property and pay the tax if the corporation does not do so.

3. The fact that national bank shares are taxed in the hands of the owners, while the mode of taxing other banking institutions is by the imposition of a franchise tax, does not necessarily result in a discrimination against national bank shares; and, before the court can hold that such is its effect, it must be averred and established as any other fact.

BECKNER & JOUETT, Attorneys for appellant.

1. The act of Congress permitting the taxation of shares of national banks in the hands of shareholders, does not require that State banks shall be taxed *in the* same manner as national banks, but merely that the national bank shares shall not be taxed at a greater rate than State banks.

2. In order for State to tax national bank shares it is not necessary to have a statute prescribing, *eo nomine*, the method of so doing, provided its general laws for taxing personalty are broad enough to cover this class of property.

3. The Constitution and taxing laws of Kentucky, in force September 15, 1899, were sufficiently broad to cover national bank shares, and the assessor having listed them for taxation in the names of the owners and there being no claim of any irregularity or any discrimination in favor of other capital, the tax is legal and collectible.

### AUTHORITIES CITED.

Owensboro Nat. Bank v. Owensboro, 173 U. S., 663; U. S. Rev. Stats., sec. 5219; Henderson Bridge Co. v. Kentucky, 166 U. S., 150; Van Allen v. Assessors, 70 U. S., 573; Mercantile Nat. Bank v. City of New York, 121 U. S., 138; People v. N. Y. Tax Comrs., 4 Wall., 244; Davenport Nat. Bank v. Board of Equal., 123 U. S., 83; White v. Dawley, 94 U. S., 664; Adams & Co. v. Nashville, 95 U. S., 60; Ky. Stats., sec. 4085, 4088, 4058, 4020, 4022, 4047; Con. of Ky., secs. 171 and 174; Black on Interpretation of Laws, 56, 60, 93, 52, 100, 102, 106, 176.

J. M. BENTON, Attorney for appellees.

D. L. PENDLETON of counsel.

### POINTS AND AUTHORITIES.
#### I.

1. No tax can be assessed against or collected on the shares of stock in national banks of this State, until there is a statute enacted

determining and directing the manner and place of taxing the shares. Revised Statutes of the U. S., section 5219.

2. This class of property can not be assessed under the general taxing clauses of the statute, because in 1886 those clauses were repealed in so far as they applied to the property of banks or the shares therein by the Hewitt bill, and the repeal of that bill by the adoption of 4077, and the sections which follow it of the Kentucky Statutes, did not and could not revive those general clauses so as to have them affect banks or the shares therein, Section 464, Ky. Statutes.

## II.

1. A tax on the capital of a State bank is not the legal equivalent of a tax on the shares of a national bank. Cooley on Taxation, p. 395; Morse on Banks and Banking, p. 1252; Owensboro National Bank v. City of Owensboro, 173 U. S., 663; Hubbard v. Board of Sup., 23 Iowa, 130.

2. For the county assessors to assess shares in national banks at their fair cash value, making no deduction on account of the real estate or other tangible property of the bank, while the State Board of Valuation and Assessment deducts the value of the real estate and other tangible property in fixing the taxable value of the capital of State banks results in a legal discrimination against the holder of stock in a national bank, which is prohibited by section 5219 of the Revised Statutes.

3. The law makers of the State never intended to adopt a method of dealing with the taxation of banks which would enable every holder of stock in national banks to resort to the courts for a determination of the question as to whether or not his property had been unlawfully discriminated against.

OPINION OF THE COURT BY CHIEF JUSTICE HAZELRIGG—REVERSING.

In September, 1899, the appellees, Bean and others, were the owners of certain shares of stock in the Clark County National Bank. The assessor of that county, in virtue of the general revenue laws of the State, assessed these shares for taxation at their fair cash value, in the hands of the various owners. When the sheriff, in due course, was about to collect the tax, this suit was brought to prevent him, on the ground that shares of stock in national banking associations in Kentucky are not assessable or

taxable, because the Legislature has not determined and directed the manner and place of taxing such shares. The chancellor upheld the plaintiff's contention, and the sheriff has appealed.

It is to be noted at the outset that this species of property can not be taxed within the various States except as permitted by Federal law, and the statute so permitting and by which we are to be guided (Rev. St. U. S. section 5219), is as follows: "Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such share, in assessing taxes imposed by authority of the State within which the association is located; but the Legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either State, county or municipal taxes, to the same extent, according to its value, as other real property is taxed." As, admittedly, the assessor has included the shares of stock in question in the valuation of the personal property of their owners, the question is narrowed down to this: Had the Legislature in 1899 determined or directed the manner and place of taxing shares in national banking associations? And, if we answer this question in the af-

firmative, then a second question is presented, namely:
Does the law thus provided by the Legislature discrim-
inate against national bank shares, by requiring them to
be taxed at a greater rate than is assessed upon moneyed
capital in the hands of individual citizens of the State?

Touching the first question, it is admitted by appellant
that our revenue statutes do not designate this charac-
ter or class of property, *eo nomine*, for taxation; but section
4020, Kentucky Statutes, thus provides: "All real and
personal estate within this State and all personal estate
of persons residing in this State, and of all corporations
organized under the laws of this State, whether the prop-
erty be in or out of this State, including intangible prop-
erty, which shall be considered and estimated in fixing
the value of corporate franchises as hereafter provided,
shall be subject to taxation unless the same be exempt
from taxation by the Constitution, and shall be assessed
at its fair cash value estimated at the price it would bring
at a fair voluntary sale." Section 4022 further provides:
"For the purposes of taxation, real estate shall include
all lands within this State and improvements thereon;
and personal estate shall include every other species and
character of property—that which is tangible as well as
that which is intangible." By sections 4047 and 4052 the
taxpayer is required to list, under oath, all and every
species of property belonging to him or in his possession,
subject to taxation, on the 15th day of September of each
year, and be bound for the tax. Section 4050 provides
thus: "Personal property of every kind shall be separ-
ately stated and valued in the appropriate column of the
tax-book herein provided, and if there be no appropriate
column, it shall be valued and stated in the column headed
'Miscellany.' " Item 10 of the schedule provided by sec-

tion 4058 reads thus: "(10) Amount of stock in joint stock companies or associations of this State not paid on by the company or association." That this language is intended to make a distinction, not between national and State corporations, but merely between resident and foreign ones, is shown by the next item (No. 11), which reads: "Amount of stock in foreign corporations." And the schedule (section 4058), after an elaborate enumeration, provides the following as the first item under "Miscellany:" "(74) Value of all property not mentioned above." If, as contended by the appellees, and, indeed, as seems to be settled by a number of cases—notably, in Owensboro Nat. Bank v. City of Owensboro, 173 U. S., 664; (19 Sup. Ct., 537); (43 L. Ed., 850) —the association is not taxable directly or on its franchise, then our statutes, by necessary implication, require the stockholder to list his shares of stock for taxation; for by sections 4085 and 4088 the individuals owning shares of stock in corporations which are required to list property are not required to list it so long as the corporation does so. This means, necessarily, that, if the corporation does not list the property and pay the tax, the individual must do so. We think the various statutes are sufficiently broad to constitute a legislative determination and direction of the manner and place of taxing every species of personal estate to be found in the State, and under them such estate is to be taxed, unless by more specific provisions it is to be taxed otherwise; and as the statutes which were intended to apply to the taxation of banking associations and bank stocks, including national banks, have been held void as to national banks, it follows that there is no specific provision for the taxation of the species of personal property in question, and its taxation must be held to be regulated by general law. It

is argued by counsel for appellees, in this connection, that these general revenue laws were not intended to apply to the taxation of bank stock, and as the particular law under which it was intended such stock was to be taxed has been held to be ineffectual and void as to shares of stock in national banks, there is no law at all under which such shares can be taxed. But it is to be noticed that the general laws are merely declaratory of the requirements of the Constitution (section 174), which declares that "all property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempted;" and while the general provisions of our statute were not intended, perhaps, to be the particular provisions under which bank stocks were in fact to be assessed, still the general provisions, constitutional and statutory, lie at the foundation of the authority to tax, and are sufficiently specific to authorize the taxation of every species of moneyed capital in the State.

With respect to the second question, it is to be observed that there is no averment that, as matter of fact, the shares of appellees have been taxed at a greater rate than other moneyed capital. Still, if the law under which they have been assessed is of such a character as that discrimination against this kind of moneyed capital necessarily results, then the Legislature has not provided such a law for the taxation of such shares as is permitted by the act of congress in the section of the law quoted above. We think that here there is no serious difficulty. Admittedly, if the very terms of the Federal statute are to be observed, the correct method of taxing these shares has been adopted. The shares of the banking association have been assessed in the names of the shareholders, and, as required

by that statute, have been included in the valuation of the
personal property of the various shareholders. It is not
material to the matter in issue if the method of taxing
other moneyed capital or other bank stocks is
different from that followed in the taxation of
shares in national banks. It does not follow that
a different method for taxing national bank shares
will result in their taxation at a greater rate than that
imposed on other bank shares. It may result in taxing
them at a less rate. We understand the law as announced
by the United States Supreme Court to be that no inquiry
will be made into the method a State might adopt for tax-
ing its "other moneyed capital," so long as its laws do not
discriminate against the moneyed capital which is evi-
denced by shares in national banks. Mercantile Bank v.
City of New York, 121 U. S., 138; (7 Sup. Ct., 826); (30 L. Ed.,
895); Davenport Nat. Bank, v. Davenport Board of Equaliz-
ation, 123 U. S., 83; (8 Sup. Ct., 73); (31 L. Ed., 94.) In this
State the taxation of other banking institutions is by the
imposition of a franchise tax. Section 4077, Kentucky
Statutes. The value of the franchise is fixed by the board
of valuation and assessment. The data for fixing it are
furnished by reports made by these institutions to the
auditor of public accounts. In these reports various facts
are to be stated. For example: "The amount of capital
stock, preferred and common; the number of shares of
each; the amount of stock paid up; the par and real value
thereof; the highest price at which such stock was sold
at a *bona fide* sale within twelve months next before the
date of assessment; the amount of surplus fund and un-
divided profits and the value of all other assets; the total
amount of indebtedness as principal; the amount of gross.

or net earnings or income, including interest on investments and incomes from all other sources for twelve months next before date of assessment the amount, kind and value of taxable property in this State," etc. From these reports the board fix the value of the capital stock, and it is manifest that it is largely a matter in their discretion and judgment what that value shall be. From their valuation of the capital stock is to be deducted the assessed value of the tangible property, and the remainder will be the value of the franchise. It can not be said that this method of assessment and taxation will necessarily result in a discrimination against national banks; and, if not, then if, as a matter of fact, in any given case, a discrimination results, it must be averred and established as any other fact, which, as we have seen, is not done here.

In our opinion, the assessment of the shares in question was properly made, and the taxes thereon are collectible in the manner sought in this case. Whereupon the judgment is reversed, and the cause remanded for proceedings consistent herewith.